IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONALD KEITH DENNIS | § | |
|     TDCJ-CID #1093314 | § | |
| v. | § | C.A. NO. C-12-129 |
| | § | |
| RICHARD CRITES, ET AL. | § | |

### ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment. (D.E. 40). Plaintiff has submitted a response in opposition. (D.E. 53). For the reasons stated herein, defendants' motion is granted in part and denied in part.

### I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Pursuant to the parties' consent, (D.E. 14; D.E. 16), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 19); see also 28 U.S.C. § 636(c).

### II. BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), confined at the Hughes Unit located in Gatesville, Texas. The events that form the basis of his claims occurred while he was confined at the McConnell Unit in Beeville, Texas.

Plaintiff filed this action on April 25, 2012, alleging Eighth Amendment violations arising from an assault by another inmate that occurred on February 8, 2010. (D.E. 1; D.E. 30). Specifically, he contends that defendants Richard Crites, Matt Barber and Rafael Menchaca failed to protect him from the assault, and that defendants Norma Saenz and Stephanie Sanchez

failed to investigate his complaints regarding his life endangerment. (D.E. 1, at 3). As relief, plaintiff seeks to be provided safety and protection in prison, as well as compensation for defendants' constitutional violations. Id. at 4.

On June 22, 2012, a Spears[1] hearing was held, and on August 24, 2012, plaintiff submitted an amended complaint. (D.E. 30). The facts developed in the hearing, as well as in plaintiff's complaint and defendants' motion for summary judgment, reveal the following:

Prior to the February 8, 2010 incident, plaintiff had difficulties with an inmate known as "Big Mackey," who was associated with a prison gang called the Black Gangster Disciples. Specifically, Big Mackey indicated that he intended to hold plaintiff accountable for money that his previous cell mate had owed to the gang prior to being transferred to another unit. Plaintiff refused to pay, and the conflict resulted in an altercation on May 11, 2009. Afterwards, he filed for an Offender Protection Investigation and was reassigned to 3 Building. Over the course of 2009, he filed for five additional Offender Protection Investigations based on gang-related threats, requesting transfer to another unit. His requests were denied each time for insufficient evidence.

When Big Mackey was reassigned to the 4 Building in December 2009, plaintiff received an anonymous threat he believed came from him. He filed another Offender Protection Investigation request, again seeking transfer. Captain Gonzales conducted the investigation and concluded that the "allegations of threats from Offender Mackey and the [Black Gangster Disciples] cannot be confirmed" due to insufficient evidence. Defendant Barber concurred with these findings and signed off on the investigation. (D.E. 40-3, at 13). A Unit Classification

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings) (citation omitted).

Committee hearing was held on December 15, 2009 to review the investigation. During the hearing, plaintiff explained his circumstances to defendants Crites, Barber, Saenz, and Sanchez, who were all members of the committee. They each indicated that they did not believe his account of events regarding the gang threats because, when asked, plaintiff could not remember the name of his previous cellmate. In addition, defendants Crites and Barber told him that he could take care of himself. Nevertheless, the Unit Classification Committee recommended that plaintiff be transferred on December 15, 2009. (D.E. 40-3, at 13). On February 5, 2010, the State Classification Committee reviewing the recommendation determined that there was insufficient evidence to warrant transfer.

On February 5, 2010, defendant Crites moved plaintiff to the 8 building. On February 7, an inmate known as "Sleepy," who was a member of the Black Gangster Disciples, verbally threatened him. Plaintiff reported the threat to Sergeant Garza, who told him that he would take care of it and directed him to return to his cell. The next day, plaintiff was assaulted while emerging from his cell, when an inmate approached him from behind and hit him in the head with an electric fan motor wrapped in a sock. He sustained injuries to his scalp. He reported the assault to the desk officer who was on duty, and was then escorted to the infirmary for treatment of his wounds. Plaintiff subsequently identified his assailant as Sleepy.

Plaintiff submitted a Step 1 grievance regarding the incident on February 8, 2010, seeking a unit transfer. In response, Warden Jackson indicated that the Unit Classification Committee had recommended his transfer as a result of the assault. Plaintiff filed a corresponding Step 2 grievance, the response to which noted that he had already been transferred to another unit.

Plaintiff filed this action on April 25, 2012. (D.E. 1). On February 14, 2013, defendants filed a motion for summary judgment. (D.E. 40). Plaintiff submitted a response in opposition, (D.E. 53), to which defendants filed a reply. (D.E. 54).

### III. DISCUSSION

Defendants seek summary judgment on three different grounds: (1) plaintiff has not exhausted his administrative remedies as to defendants Barber, Sanchez, and Saenz; (2) defendants are entitled to qualified immunity; and (3) defendants are entitled to Eleventh Amendment immunity. (D.E. 40).

**A.     The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, the Court may only consider affidavits made on personal knowledge, which set forth "such facts as would be admissible in evidence, and [show] affirmatively that the affiant is competent to testify to the matters stated therein."

Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

However, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. Id. (citation omitted). Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

**B.      Plaintiff Has Exhausted His Administrative Remedies As To All Defendants.**

Defendants argue that they are entitled to summary judgment because plaintiff has failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e. Specifically, they contend that plaintiff did not include his claims against defendants Sanchez, Saenz, and Barber in his grievance related to the February 8, 2010 incident.

In the Prison Litigation Reform Act, Congress mandated that prisoners must exhaust administrative remedies prior to filing § 1983 actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002) (citing Porter). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 83-85 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). A prisoner must pursue his grievance at both the Step 1 and Step 2 level in order to exhaust his administrative remedies. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358 n.2). The purpose

6

of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 548 U.S. at 94. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

In Johnson, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'" 385 F.3d at 516 (quoting Porter, 534 U.S. at 525); accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted). In addition, the nature of the complaint will influence how much detail is necessary. Id. at 517. For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual. Id.

In support of summary judgment, defendants have offered evidence of plaintiff's grievances filed between May 2009 and May 2010. Of the twenty-six grievances plaintiff submitted during this time, only one–grievance number 2010098077–addressed the February 8, 2010 assault. In that grievance, he filed his Step 1 on February 10, 2010, explaining the facts that form the basis of this action. He indicates that he was placed in the 8 Building because the Unit Classification Committee did not investigate his safety complaints, and that it, as well as defendant Crites, were responsible for moving him there on February 5, 2010. In addition, he alleges that defendant Menchaca was not at his assigned post at the time of the assault, but that if he had been, he would have been able to prevent the incident. He does not mention defendants

Sanchez or Saenz. In response to this grievance, Warden Jackson noted that the Unit Classification Committee had recommended a transfer because of the assault. (D.E. 40-2, at 56).

Plaintiff filed a Step 2 appeal on March 23, 2010, complaining that he should have been transferred prior to the assault, and alleging that the members of the Unit Classification Committee, including defendants Barber, Crites, Sanchez, and Saenz, put his life in danger by placing him in 8 Building and failing to investigate his complaints. In response, the TDCJ Assistant Regional Director provided that his complaint had been noted, that he had since been reassigned to another unit, and that no further action was warranted.

Plaintiff failed to assert specific claims against defendants Barber, Sanchez, and Saenz in his Step 1 grievance. However, he articulated his complaints against the Unit Classification Committee that presided over his December 15, 2009 hearing, of which defendants were members. He reiterated the same complaints and specifically named defendants in his Step 2 grievance. This is sufficient to satisfy the exhaustion requirement as prison officials and defendants were on notice of the problem. See Johnson, 385 F.3d at 523 (finding that the plaintiff exhausted his remedies because his "grievances repeatedly refer[red] to the UCC committees and their failure to believe his pleas and take measure to protect him"). Accordingly, plaintiff has properly exhausted his claims against defendants.

**C.     Defendants Are Entitled To Eleventh Amendment Immunity.**

Next, defendants contend that to the extent plaintiff has sued them in their official capacities they are entitled to Eleventh Amendment immunity.

The Eleventh Amendment bars claims against a state filed pursuant to § 1983 seeking monetary damages against defendants in their official capacity. Aguilar v. Texas Dep't of Crim.

Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Farias v. Bexar County Bd. Of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the state's sovereign immunity," and Texas has not otherwise consented to be sued. Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n.7 (1979); Emory v. State Bd. Of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984)). A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted). Therefore, such claims are barred by the Eleventh Amendment.

Plaintiff's claims against defendants in their official capacities are effectively ones against the State. Therefore, defendants are entitled to Eleventh Amendment immunity.

**D.     Defendants Are Entitled To Qualified Immunity In Part.**

Finally, defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). First, the plaintiff must show that the defendants committed a constitutional violation under current law. Id. (citations omitted). Second, he must show that defendants' actions were objectively

unreasonable in light of the law that was clearly established at the time the events of which plaintiff complains occurred. Id. (citations omitted). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

      1.      **Step 1–Constitutional violation**.

The Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). Accordingly, a prison official may be held liable for failing to protect an inmate if he is deliberately indifferent to a substantial risk of harm. Johnson, 385 F.3d at 524. An official is deliberately indifferent if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Cantu, 293 F.3d at 844 (citing Farmer, 511 U.S. at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In other words, mere negligence does not suffice. See id.; see also Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

Here, defendants argue that plaintiff has failed to show that defendants Crites, Barber, and Menchaca knew or should have known of a serious risk to his safety in 8 Building prior to February 8, 2010. They explain that the threats he had reported in December 2009 pertained

only to the 11 Building, and involved inmates who were transferred out of the McConnell Unit that month. In addition, they contend that plaintiff did not report any threats about the inmate who assaulted him, Sleepy, and that Sleepy was not a member of the Black Gangster Disciples. Finally, they argue that defendant Menchaca was in no way disregarding his duties at the time of the incident because, as the 8 building rover, he was busy preparing for commissary visits. They maintain that, regardless, he could not have prevented the incident even if he had witnessed it.

Notwithstanding these arguments, plaintiff has sufficiently established a failure to protect claim against defendant Crites for the purposes of avoiding qualified immunity. The evidence shows that he reported numerous threats from members of the Black Gangster Disciples, and that he specifically spoke to defendant Crites regarding these threats prior to the incident. Moreover, plaintiff raised his concerns at the December 15, 2009 Unit Classification Committee hearing, in response to which defendant Crites told him that he could take care of himself. On February 5, 2010, the State Classification Committee denied plaintiff's unit transfer request and defendant Crites placed him in the general population of 8 Building, apparently along with other gang members. Although defendants contend that Sleepy was not involved in the Black Gangster Disciples, the evidence shows that his status was unknown, (D.E. 40-3, at 14), and plaintiff contends that he was, in fact, a member. Given the ongoing nature of threats from that gang as well as the fact that plaintiff repeatedly reported the difficulties he was encountering with its members, defendant Crites' failure to take protective measures on plaintiff's behalf amounts to deliberate in difference for the purposes of making qualified immunity inappropriate. See Edmond v. Eaves, 70 F. App'x 159, 160 (5th Cir. 2003) (per curiam) (unpublished) ("A prison official may not escape liability in a failure-to-protect claim 'by showing that, while he was

11

aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.'") (quoting Farmer, 511 U.S. at 843); Johnson, 385 F.3d at 526-27 (noting that "an official may not simply send the inmate [who has been threatened] into the general population to fight off attackers") (citing Farmer, 511 U.S. at 832-33).

On the other hand, plaintiff's claim against defendant Barber fails because he has not shown how he was involved in his placement in the 8 Building. Defendant Barber signed off on the December 2009 Unit Classification Committee recommendation that plaintiff be transferred, despite that he found his claims unsubstantiated and even told him that he could defend himself in the general population. See Johnson, 385 F.3d at 526-27 (members of Unit Classification Committee not entitled to qualified immunity because the denial of endangered inmate's requests for transfer constituted deliberate indifference). Accordingly, his conduct on the Committee was not deliberately indifferent. Plaintiff has not alleged that defendant Barber failed to act to intervene on his behalf in some other way, and it is unclear whether he had the authority to do so. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a [§ 1983] civil rights cause of action."); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between the injury and the defendant's conduct). Accordingly, plaintiff has failed to establish a constitutional violation as to defendant Barber for the purposes of qualified immunity.

As to defendant Menchaca, plaintiff has not addressed whether and how he became aware of the gang threats. In addition, the possibility that he was neglecting his duties overseeing the area in which plaintiff was assaulted does not establish deliberate indifference,

but rather, negligence. Accordingly, plaintiff has failed to show that defendant Menchaca was deliberately indifferent for the purposes of qualified immunity.

Regarding plaintiff's allegations that defendants Sanchez and Saenz failed to investigate his complaints regarding threats from the Black Gangster Disciples, he has not stated a legally cognizable claim pursuant to 28 U.S.C. § 1983 because he does not have a federally protected liberty interest in having his grievances investigated or answered favorably. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005); see also Beall v. Johnson, 54 F. App'x 796, 2002 WL 31845615, at *1 (5th Cir. Dec. 12, 2002) (per curiam) (unpublished). Accordingly, plaintiff has not established a constitutional violation as to defendants Sanchez and Saenz for the purposes of qualified immunity.

### 2. Step 2–Objective reasonableness.

Pursuant to the second step of the qualified immunity analysis, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). For a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Furthermore, even officers who interpret the law mistakenly but reasonably are entitled to immunity. See id. at 641. Indeed, prison officials "are entitled to wide-ranging deference" in handling disturbances and inmates who refuse to obey orders. Baldwin v. Stadler, 137 F.3d 836, 840 (5th Cir. 1998).

In the context of an Eighth Amendment failure to protect claim, the law is well

established that a prison official's actions are objectively reasonable if she knew of the risk and failed to take reasonable measures to alleviate it. Farmer, 511 U.S. at 847. Defendants insist that defendant Crites' conduct was reasonable because plaintiff's December Offender Protection Investigation did not result in transfer to another unit by the State Classification Committee. However, the State Classification Committee's decision based on its assessment of the seriousness of the threat does not establish a constitutional standard for reasonableness. Because defendant Crites was aware of a risk to plaintiff and failed to act reasonably to alleviate it, his conduct was objectively unreasonable. See Johnson, 385 F.3d at 527 (finding that prison official's conduct was unreasonable in light of clearly established law when he indicated to plaintiff that he must learn to fight his attackers and sent him back into general population). Accordingly, he is not entitled to qualified immunity.

As to the other defendants, the Court need not examine whether their actions were reasonable because plaintiff has failed to state a constitutional violation. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Accordingly, they are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (D.E. 40), is granted in part and denied in part. It is hereby ordered that plaintiff's individual capacity claims against defendants Barber, Sanchez, Saenz, and Menchaca, as well as plaintiff's official capacity claims be dismissed. In addition, it is ordered that plaintiff's failure to protect claim against defendant Crites proceed to trial.

ORDERED this 16th day of April 2013

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE